# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3743

_____

Yonis Ahmed Ali, also known as
Hussain Isse Mohamud,

        Petitioner,

v.

Eric H. Holder, Jr., Attorney General
of the United States,

        Respondent.

\*
\*
\*
\*
\*  Petition for Review of
\*  an Order of the Board
\*  of Immigration Appeals.
\*
\*
\*
\*

_____

Submitted: June 12, 2012
Filed: July 20, 2012

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Yonis Ahmed Ali, a native and citizen of Somalia, applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). An Immigration Judge (IJ) denied Ali's applications and the Board of Immigration Appeals (BIA) dismissed his appeal. Ali now petitions for review of the BIA order. We deny the petition.

Ali entered the United States, using the name Hussain Isse Mohamud, as a spouse of a refugee in 1995 and became a lawful permanent resident the following year. The Department of Homeland Security (DHS) initiated removal proceedings against him after he admitted during an interview for a naturalization application that he had used someone else's name to gain admission to the United States. The charging document alleged that he failed to possess a valid visa or entry document at the time of entry or adjustment of status and that he had sought a visa or other immigration benefit by fraud or willful misrepresentation of a material fact. See 8 U.S.C. §§ 1227(a)(1)(A), 1182(a)(7)(A)(i)(I), 1182(a)(6)(C)(i). He conceded removability as to the first charge, admitting to the underlying factual allegations, but denied the charge of fraud or willful misrepresentation. Later he attempted to withdraw his pleadings. Ali then sought relief from removal in the form of asylum, see 8 U.S.C. § 1158(b)(1), withholding of removal, see 8 U.S.C. § 1231(b)(3), and protection under the CAT, see 8 C.F.R. § 208.18.

At a hearing on his applications for immigration relief in March 2010, Ali testified that he was born in Galkayo, Somalia and is a member of the Madhiban clan. He explained that when he was a young child he had been sent to live with adoptive parents in Galkayo so that he could attend school there and that they changed his name to Hussain Isse Mohamud. He married Saido Ahmed Shali in the summer of 1988, and they lived together in Mogadishu until war broke out in 1991. They fled Mogadishu separately, and Ali eventually went to Kenya where he lived in refugee camps. Later he was granted permission to enter the United States through his marriage to Shali, who by that time was already a refugee in the United States. See 8 U.S.C. § 1157. He explained that once he got to the United States he realized that his immigration documents listed the wrong birth date. He applied in state court to have his name changed back to his birth name and his date of birth changed. Only the name change was granted. He and Shali divorced in 2002.

Ali presented testimony and an affidavit regarding his fear of returning to Somalia. He explained that his adoptive father, who belonged to the Darod clan, had been part of an opposition group and had been detained, jailed, and "maybe . . . tortured." He said that the Madhiban minority clan of which he was a member was "under pressure" from larger clans and had no militia to defend itself. He further explained that he feared persecution because of his adoptive father's political beliefs and his own tribal affiliation. Although he admitted that he had never been physically harmed, he testified that because of the unstable conditions in Somalia "anything can happen to anybody."

Ali was also questioned about a 2001 statement he had made during an interview for his naturalization application in which he told an immigration officer that he had used the name Hussain Isse Mohamud, the name of Shali's deceased husband, in order to become eligible for derivative refugee status and that he had never been married to Shali. In a 2005 affidavit, apparently submitted with a second naturalization application, Ali had explained that during the 2001 interview he was "naive" and "confused" which led to a "miscommunication." In a 2010 affidavit submitted to the IJ, Ali explained that he had "made up stories" at the 2001 interview and that he had been nervous and "did not quite understand the questions and the answers [he] offered." When questioned by the IJ about that statement, Ali stated that he did not "remember much about that interview" and did not understand many of the questions. The IJ then asked how he could have received a bachelor's degree in civil engineering from the University of Minnesota in the meantime if he could not understand basic English. Ali responded, "There are some things that I might've understood, there are some things I did not." When the IJ asked him if he had lied during his 2001 statement, Ali said "I think it might not have been true."

During the hearing other discrepancies emerged in Ali's testimony. After Ali stated that he had "never had a passport," the government presented his Somali passport issued in the name of Hussain Isse Mohamud. That passport contained an

incorrect date of birth which Ali testified he had not noticed until arriving in the United States. Ali also denied living anywhere in Africa besides Somalia and Kenya but then admitted he had lived in Ethiopia and possibly Djibouti. In addition, he gave conflicting statements regarding Shali's clan affiliation, suggesting initially that she too was Madhiban, then stating that he did not know her clan but knew it was a minority tribe, and finally conceding she was a member of the Darod clan which is not a minority group.

The IJ issued a decision in June 2010, sustaining both charges of removability. The IJ found that substantial evidence established that "Mr. Ali committed fraud and willfully misrepresented his identity and relationship to Saido Shali in order to enter the United States as the spouse of a refugee" and that Ali's testimony attempting to rebut that evidence was not credible. As to Ali's applications for relief, the IJ concluded that Ali's testimony was inconsistent, his responses to questioning were "evasive and unresponsive," and "thoroughly confus[ing]." Based on "numerous inconsistencies and Mr. Ali's inability to explain [them]," the IJ made an adverse credibility finding and denied his claims for relief. In the alternative, the IJ concluded that regardless of the credibility finding, Ali had failed to establish eligibility for asylum, withholding of removal, or CAT relief. Accordingly, Ali was ordered removed to Somalia.

Ali appealed to the BIA, which dismissed his appeal. The BIA concluded that "inconsistencies noted by the [IJ] are more than sufficient to support an adverse credibility finding." See 8 U.S.C. § 1158(b)(1)(B)(iii). It also upheld the IJ's alternative ruling on the merits of Ali's asylum, withholding of removal, and CAT claims, concluding that he had failed to establish his eligibility for those forms of relief.

Ali now petitions for review of the BIA order, arguing that the IJ and BIA erred in finding him not credible and that substantial evidence supports his claims for

asylum and withholding.[1] He also appears to challenge his removability based on the adverse credibility finding. We review both the BIA and the IJ decisions since the BIA essentially adopted the IJ's findings but added its own reasoning. See Krasnopivtsev v. Ashcroft, 382 F.3d 832, 837 (8th Cir. 2004). Our review of factual findings including the IJ's credibility determination is for substantial evidence, see Puc-Ruiz v. Holder, 629 F.3d 771, 777 (8th Cir. 2010); such findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

We first examine the adverse credibility determination, since that was the basis for the IJ's denial of relief and the IJ's conclusion that Ali failed to rebut the charges of removability. The IJ's adverse credibility determination is afforded "much weight because the IJ sees the witness testify and is therefore in the best position to determine his or her credibility." Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006). In assessing an asylum applicant the IJ may make an adverse credibility determination based on "the demeanor, candor, or responsiveness of the applicant," the consistency between written and oral statements, the internal consistency of his testimony, the consistency of statements with other record evidence, and "any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); see also id. § 1231(b)(3)(C) (withholding claim governed by same standard).

The IJ's adverse credibility determination, affirmed by the BIA, is supported by the record. For example, Ali's immigration papers listed an incorrect birth date. While Ali stated that he had not noticed the error until after entering the United

---

[1]To the extent Ali seeks to appeal the denial of CAT relief, that claim was waived because he failed to present it in his opening brief. See Tinajero-Ortiz v. United States, 635 F.3d 1100, 1103 n.3 (8th Cir. 2011).

States, the IJ found this explanation "implausible and not credible" given that the false date was also listed on his passport and medical documents he had signed. Ali's explanations regarding his use of the name Hussain Isse Mohamud were also inconsistent. While he asserted at the hearing that he had acquired the name from his adoptive parents in order to attend school, in his 2001 statement he admitted that he had assumed the name of Shali's deceased husband in order to gain entry to the United States and that he was not married to her. There were also inconsistencies in his testimony regarding the date of his alleged marriage to Shali, his passport, the countries he lived in while in Africa, his purportedly false 2001 statement, and Shali's clan membership. The IJ observed that Ali repeatedly changed his testimony when presented with contradictory evidence and was "evasive and unresponsive." Unable to "determine the name, birth date, marital status, or clan membership of Mr. Ali," the IJ found him not credible. We uphold the adverse credibility determination as a reasonable adjudicator would not be "compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Because we uphold the agency's adverse credibility finding, Ali cannot prevail on his challenges to the decisions of the IJ and BIA. The IJ correctly concluded that Ali failed to rebut the charges of removability based on his lack of a valid entry document and willful misrepresentations with credible testimony. His asylum and withholding claims also fail since they rested on his discredited testimony about his identity. See Fofanah, 447 F.3d at 1040 (noting that adverse credibility finding was fatal to asylum, withholding, and CAT claims since they were all "based upon the same discredited testimony").

We note that the BIA concurred with the IJ's alternative conclusion that even if Ali were credible, he had not demonstrated his eligibility for asylum or withholding. He conceded that he had not suffered any physical harm and indicated that his fear of returning to Somalia was a general fear related to civil unrest. The fact that conditions in Somalia are generally unstable is not sufficient to establish a

well founded fear of persecution as is required for asylum. See Quomsieh v. Gonzales, 479 F.3d 602, 606 (8th Cir. 2007); 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A). Nor could he show that he would more likely than not be persecuted as required for withholding of removal, since an applicant who "fails to prove eligibility for asylum cannot meet the standard for establishing withholding of removal." Turay v. Ashcroft, 405 F.3d 663, 667 (8th Cir. 2005).

Accordingly, we deny the petition for review.

_____