# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-1526

_____

Yonis Ahmed Ali

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: March 13, 2019
Filed: May 17, 2019

_____

Before SHEPHERD, ARNOLD, and ERICKSON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

In 2007, the Department of Homeland Security charged Yonis Ahmed Ali with being removable for failing to possess a valid entry document, *see* 8 U.S.C. § 1182(a)(7)(A)(i)(I), and for obtaining an immigration benefit by fraud or material misrepresentation, *see id.* § 1182(a)(6)(C)(i). The Immigration Judge sustained both charges, and, to stave off removal, Ali petitioned for asylum, withholding of removal,

and protection under the Convention Against Torture. He said he feared returning to his native Somalia because of his tribal affiliation and his adoptive father's political beliefs. After finding him not credible, the IJ denied his petition—a decision the Board of Immigration Appeals and our court upheld. *See Ali v. Holder*, 686 F.3d 534 (8th Cir. 2012).

More than five years after we denied Ali's petition for review, he moved the BIA to reopen his removal proceedings on the ground that he feared the Somali terrorist organization, Al-Shabaab. He maintained that Al-Shabaab would likely target him when he returns because he is a moderate, Westernized Muslim with a post-graduate degree who has worked in American local government.

Generally speaking, an alien may file one motion to reopen removal proceedings within ninety days of the entry of a final administrative order of removal. *See* 8 U.S.C. § 1229a(c)(7)(A), (C)(i). An alien may nonetheless move to reopen after the ninety-day mark if the motion "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered." *Id.* § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.2(c)(3)(ii).

The BIA denied Ali's motion to reopen, noting that he had not shown why he did not raise his concerns about Al-Shabaab at his March 2010 hearing, especially since counsel represented him and since Al-Shabaab had existed since 2006 and had been designated a foreign terrorist organization by the State Department in 2008. The BIA emphasized that the State Department's 2009 Country Report on Somalia detailed that Al-Shabaab violence had caused the deaths of civilian, moderate Muslims.

Ali petitions our court for review of the BIA's denial of his motion to reopen, maintaining that the BIA abused its discretion by failing to give a reasoned decision. He asserts that the BIA failed to consider the ample evidence he submitted showing

Al-Shabaab's burgeoning power and its 2014 tactical shift toward targeting civilians like him who were Westernized, moderate Muslims. Ali also contends that requiring him to demonstrate changed circumstances in the country designated for removal, as opposed to changes in his personal circumstances, to reopen his proceedings out of time violates his rights to due process and equal protection.

As an initial matter, we must determine whether we have subject-matter jurisdiction over this case, an issue that we may consider at any time. *See Gray v. City of Valley Park*, 567 F.3d 976, 982 (8th Cir. 2009). Directing us to *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), Ali suggested in a letter written to our court after the parties had filed their briefs that we do not. As the Court explained in *Pereira*, aliens in removal proceedings who have been continuously present in the United States for at least ten years may be eligible for a discretionary form of relief called cancellation of removal. *Id.* at 2109. By statute, continuous presence is deemed to end "when the alien is served a notice to appear under [8 U.S.C. §] 1229(a)." 8 U.S.C. § 1229b(d)(1). (This is called the stop-time rule.) Section 1229(a) in turn provides that a notice to appear shall be given to the alien that specifies "[t]he time and place at which the proceedings will be held."

The notice to appear in *Pereira*, as here, did not specify the time or place of removal proceedings, and the Court held that since the notice did not comport with section 1229(a) it did not trigger the stop-time rule. *Pereira*, 138 S. Ct. at 2110. Along the way, the Court stated broadly that omitting "integral information like the time and place of removal proceedings unquestionably would deprive the notice to appear of its essential character." *Id.* at 2116–17.

Ali maintains that, under *Pereira*, a notice to appear that, like his, does not contain the time and place of his removal proceeding is not valid, and "a court utilizing such a notice fails to obtain subject matter jurisdiction at its inception," and so "the entire proceedings and any subsequent [removal] order are invalid." We join

the BIA and a unanimous chorus of other circuits that have considered and rejected the argument. *See In re Bermudez-Cota*, 27 I. & N. Dec. 441, 442–47 (BIA 2018); *Banegas Gomez v. Barr*, No. 15-3269, 2019 WL 1768914, at *6–8 (2d Cir. Apr. 23, 2019); *Soriano-Mendosa v. Barr*, No. 18-9535, 2019 WL 1531499, at *4 (10th Cir. Apr. 9, 2019) (unpublished); *Santos-Santos v. Barr*, 917 F.3d 486, 489–91 (6th Cir. 2019); *Karingithi v. Whitaker*, 913 F.3d 1158, 1159–62 (9th Cir. 2019). As our sister circuits have explained, § 1229(a) says nothing about how jurisdiction vests in an immigration court. *See Karingithi*, 913 F.3d at 1160. For that we must turn to the regulations, which explain that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document," including a notice to appear, "is filed with the Immigration Court." *See* 8 C.F.R. §§ 1003.13, 1003.14(a). But under the relevant regulations, a notice to appear need only provide the time, place, and date of the initial removal hearing "where practicable." *Id.* § 1003.18(b). Ali's argument, if accepted, would require us to erase the "where practicable" language in § 1003.18(b). Furthermore, the Court in *Pereira* itself would not have had jurisdiction, yet the Court never seemed to question that it did.

The *Pereira* Court (and the dissent there, too) also took great pains to emphasize, more than once, that the question before the Court was a narrow one. *See* 138 S. Ct. at 2110, 2113, 2121. But it also noted that nearly every notice to appear within the previous three years before oral argument in *Pereira* had not contained the dates and times of the hearing. *Id.* at 2111. If Ali were correct, then the agency would not have had jurisdiction over any of those aliens it sought to remove during that time, not to mention the unknown number of aliens, like Ali, who received such a notice before then. We simply cannot reconcile the Court's answer to a self-described "narrow" question with the seismic ramifications Ali believes it produced.

In short, *Pereira* had nothing to say about when an immigration judge obtains jurisdiction over an alien's removal proceedings. The IJ and BIA therefore had

jurisdiction over Ali's removal proceedings, and we have jurisdiction over his petition for review.

Ali next argues that we should grant his petition because the BIA did not provide a rational explanation for its denial of Ali's motion to reopen. He takes issue with the BIA's failure to consider and address every item of evidence he submitted in support of his motion. We review the BIA's decision to deny a motion to reopen for an abuse of discretion, and we have held that when the BIA "does not give a rational explanation for its decision or ignores or distorts evidence," it abuses its discretion. *See Villatoro-Ochoa v. Lynch*, 844 F.3d 993, 994 (8th Cir. 2017). But we don't require the BIA to explain its decision to the degree that Ali maintains. We have said "that the BIA must consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Averianova v. Holder*, 592 F.3d 931, 936 (8th Cir. 2010). The BIA need not list every possible argument for and against its decision, and it need not write an exegesis on every contention. *Id.*

The BIA's opinion here makes clear that it "heard and thought and not merely reacted." It provided several cogent reasons for concluding that Ali could have raised his concerns during his initial removal proceedings in 2010. He may disagree with that conclusion, but that's a far cry from showing that the BIA abused its discretion.

We believe that *Zeah v. Lynch* is instructive. *See* 828 F.3d 699 (8th Cir. 2016) There, a Christian alien moved to reopen her removal proceedings out of time based on a heightened fear of the Nigerian Islamic terrorist group Boko Haram, a group that had increased its power in the country and had recently kidnaped three hundred Nigerian schoolgirls. We upheld the BIA's denial of the motion. We explained that a 2009 State Department report on Nigeria, which was available during the initial removal proceedings, specifically stated that Boko Haram was "an Islamic extremist group" that was "forcibly holding women and children" and that there was increasing

-5-

"violence between Christians and Muslims." We explained further that Boko Haram had been perpetrating violence against women and children since at least 2009, which was before Zeah's removal proceedings began, and that Zeah's evidence in support of her motion noted that Boko Haram had existed since 2002 and had long engaged in terrorism. We concluded that, despite the recent events surrounding Boko Haram, it was not an abuse of discretion for the BIA to conclude that conditions in Nigeria at the time of the motion were substantially the same as during the removal proceedings, and Zeah's "mere disagreement about the interpretation of evidence does not constitute an abuse of discretion." *Id.* at 702–04. We do not see how *Zeah* is materially distinguishable from the present case, so we conclude that the BIA did not abuse its discretion.

As for Ali's constitutional arguments, he contends first that the BIA denied him due process by interpreting the phrase "changed circumstances" in the statute permitting a tardy motion to reopen to include only changes in the country of removal and not changes in personal circumstances. He argues that construing "changed circumstances" to exclude personal changes is inconsistent with other immigration statutes and with the BIA's own handbook.

Assuming that Ali has a liberty interest in the reopening of his removal proceedings, a matter by no means obvious, *see, e.g.*, *Mendias-Mendoza v. Sessions*, 877 F.3d 223, 228 (5th Cir. 2017), we note that we have already considered and rejected this very argument. *See Averianova*, 592 F.3d at 937. Ali contends *Averianova* doesn't control because Ali presented evidence of changed circumstances in both himself and in the country of removal, whereas the alien in *Averianova* focused solely on changed personal circumstances. We don't see how that distinction is significant, but, in any event, our opinion in *Averianova* makes it clear that the alien there also presented evidence of changes in the country of her removal—we noted that in "support her motion to reopen based on changed circumstances in

Uzbekistan, Averianova filed numerous documents, including news articles and State Department country reports." *Id.* at 936.

Ali also argues that the BIA denied him equal protection by requiring him to show changed conditions in the country of removal (and not merely personal circumstances). He says the BIA treats similarly situated aliens differently because aliens not subject to a final order of removal more than ninety days old may obtain asylum by showing a change in personal circumstances. *See Zhong Qin Zheng v. Mukasey*, 523 F.3d 893, 895 (8th Cir. 2008). Our court has rejected this argument, *see Averianova*, 592 F.3d at 937, and for good reason. The government has a rational basis for treating aliens subject to a final order of removal more than ninety days old differently from those who are not—finality. *See id.*

Petition denied.

_____