**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16–1231**

ZULMA YANETH ZAVALETA-POLICIANO; O. M. P.; Z. A. P.; M. E. P.,

Petitioners,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: March 23, 2017                           Decided: July 26, 2017
Amended: September 13, 2017

Before GREGORY, Chief Judge, WILKINSON, Circuit Judge, and DAVIS, Senior
Circuit Judge.

Petition for review granted, reversed in part, vacated in part, and remanded for further
proceedings by published opinion. Chief Judge Gregory wrote the opinion, in which
Judge Wilkinson and Senior Judge Davis joined. Judge Wilkinson wrote a concurring
opinion.

**ARGUED:** Tamara L. Jezic, YACUB LAW OFFICES, Woodbridge, Virginia, for
Petitioners. Michael Christopher Heyse, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Benjamin C. Mizer,
Principal Deputy Assistant Attorney General, Mary Jane Candaux, Assistant Director,
Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent.

GREGORY, Chief Judge:

Zulma Yaneth Zavaleta Policiano petitions for review of the Board of Immigration Appeals ("BIA") decision ordering her removed to her native El Salvador. The BIA upheld the Immigration Judge's ("IJ") denial of Zavaleta Policiano's asylum claim, affirming the finding that she failed to show past persecution or fear of future persecution on account of her family membership. We now conclude that the BIA erred and accordingly grant Zavaleta Policiano's petition for review, reverse in part and vacate in part the BIA's order, and remand for further proceedings.

I.

On August 27, 2012, Zavaleta Policiano and her three children entered the United States without inspection near Eagle Pass, Texas.[1] The following day, the Department of Homeland Security served each family member with a Notice to Appear, charging them as aliens present in the United States without proper admission or parole as required under the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i). Zavaleta Policiano conceded removability but filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Zavaleta Policiano filed several exhibits in support of this application, including a sworn affidavit testifying to the alleged persecution she suffered at the hands of an El Salvadoran gang. Administrative Record ("A.R.") 163; 210–11.

--------

[1] Zavaleta Policiano's children are derivative beneficiaries of her asylum application. *See* 8 U.S.C. § 1158(b)(3)(A).

In January 2014, the parties appeared for a hearing before the IJ, at which the Government stated, "I have no reason to doubt the veracity of the respondent's statement. I believe this to be solely a legal issue, as to whether or not the facts, as they are right here, would actually give rise to a claim for asylum, withholding, or [CAT] protection." A.R. 65. When the IJ asked whether the Government stipulated to the credibility of Zavaleta Policiano's affidavit, Government counsel responded, "Yes, your honor." A.R. 65. Zavaleta Policiano did not provide live testimony at the hearing in light of the Government's stipulation. *See* A.R. 66. And both the IJ and BIA acknowledged the Government's stipulation in their respective written opinions. *See* A.R. 50 (IJ recognizing stipulation); A.R. 4 (BIA recognizing stipulation and noting that, pursuant to the stipulation, "the respondent did not provide testimony").

As recounted in her affidavit, Zavaleta Policiano was born in El Salvador and grew up in the town of Lourdes Colon in the Department of La Libertad. Throughout Zavaleta Policiano's childhood, her father, Jeremias de Jesus Zavaleta Barrientos, owned a wholesale business in La Libertad that sold items such as "sodas, oil, flours, [and] legumes" to smaller stores in the area. A.R. 210. Her father's business—"Agencia Policiano"—bore the family name. A.R. 210.

After Zavaleta Policiano married in 1998, Zavaleta Barrientos helped her start a small convenience store of her own. Zavaleta Policiano stocked items from her father's store, and the two shops were located one block apart. Both stores were "very well known" in the region, and it was also known that Zavaleta Policiano and her father "were related and part of the Policiano family." A.R. 210.

3

Over time, the Mara Salvatrucha gang ("MS-13") infiltrated the town of Lourdes Colon and began to extort Zavaleta Barrientos. The gang initially demanded $100 per month, which he paid to avoid any problems. But the amount kept increasing—to $200 per month, then $500 per month, and eventually $1,000 per month. A.R. 210. It became impossible for Zavaleta Policiano's father to meet these demands, and MS-13 "began to threaten him and threaten that they would kill his family." A.R. 210. Barrientos feared for his life and fled to Mexico. When Barrientos left he asked his daughter to come with him, but because Zavaleta Policiano was concerned about fleeing with three children, she decided to stay in El Salvador.

Zavaleta Policiano explains that "[i]mmediately after [her] father left, in the month[s] of January and February of 2012," she started "receiving threatening notes and phone calls." A.R. 210. On multiple occasions, the gang also sent a child to Zavaleta Policiano's store with a prepaid phone, and the child told her that she had a phone call. When she picked up the phone, the caller stated that Zavaleta Policiano "needed to give the child money or else." A.R. 210. The caller threatened that if she did not comply with the gang's demands, MS-13 would kidnap her daughter. Fearful of these threats, Zavaleta Policiano handed over money to the child multiple times. At least two times, the gang gave the child a note to pass to Zavaleta Policiano, which she retained and entered into the record. The translated version of the first note reads:

> Mrs. Sulma we the salvaruchos [the gangs] inform you that we will begin to collect la renta [rent]. For the sake of you and your family [do] not notify a la Chota [the police] because this is not a game and we know all your moves . . . .

4

A.R. 144 (first, second, and fourth alterations in original). The second note reads as follows:

> Mrs. Zulma you were already notified and now el barrio [the gangs] tell you that a morrita [person] will collect every Wednesday 100 baros [the money] renta [income] to you to pay. We thank you for your cooperation and if you do not want to pay you will pay with the blood of your children.

A.R. 146 (alterations in original). Zavaleta Policiano "was terrorized" and did not let her children leave the family's home for two months. A.R. 211.

Zavaleta Policiano filed a complaint with the police in March 2012. The police officer told her "to be careful with [her] children and that if [she] could [she] should leave." A.R. 211. Soon thereafter, Zavaleta Policiano sold what she could of her store's inventory and decided to leave for the United States. Zavaleta Policiano expressed in her affidavit, "I fear returning to El Salvador. As a member of the well[-]known Policiano family, all of whom have fled in lieu of continuing being extorted by the gangs, I fear for my safety and the safety of my children." A.R. 211.

Zavaleta Policiano asserted an asylum claim before the IJ, arguing that she had suffered past persecution and had a well-founded fear of future persecution, on account of (1) her membership in the Policiano family, (2) her membership in the social group of El Salvadoran business owners who have been deprived of the right to work by the demands of gangs, and (3) her political opinion. She separately asserted a withholding of removal claim and a CAT claim.

The IJ denied the asylum claim, holding that Zavaleta Policiano had not adequately shown persecution based on a protected ground. Although the IJ recognized

5

that family ties qualified as a protected ground, the IJ found that Zavaleta Policiano had "failed to produce evidence that she was threatened and harassed *because of* her relationship to her father." A.R. 51–52. The IJ further held that Zavaleta Policiano was not extorted because of her political opinion, that her proposed group concerning El Salvadoran business owners was not a cognizable social group, and that alternatively, there was no nexus between that proposed group and the gang's threats. Because Zavaleta Policiano failed to meet the requirements for asylum, the IJ accordingly held that she was not entitled to relief for withholding of removal under that claim's heightened burden of proof.

The IJ also denied CAT protection. Finding "little evidence in the record" to suggest Zavaleta Policiano would be tortured if removed to El Salvador, the IJ concluded that she had not carried her burden on the CAT claim. A.R. 53.

In a three-page, single-member opinion, the BIA affirmed the IJ's decision in full. A.R. 3–5. Most important here, the BIA upheld the IJ's finding that Zavaleta Policiano failed to establish the gang's threats were motivated by her family ties.

Zavaleta Policiano timely filed a petition for review of the BIA's decision in this Court.

## II.

The Immigration and Nationality Act permits the Attorney General to grant asylum to eligible applicants. 8 U.S.C. § 1158(b)(1)(A). To prove eligibility under 8 U.S.C. § 1101(a)(42)(A), Zavaleta Policiano must show that she (1) has suffered past

6

persecution or "has a well-founded fear of persecution; (2) on account of a protected ground; [and] (3) by an organization that the Salvadoran government is unable or unwilling to control." *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015).

Where the BIA "issues its own opinion without adopting the IJ's reasoning," as it did here, this Court focuses its review on the BIA's order.[2] *Id.* at 948; *see also Martinez v. Holder*, 740 F.3d 902, 908 (reviewing only BIA order when it did not adopt the IJ's opinion, as the BIA decision "constitutes the final order of removal"). But if the BIA holds that the IJ did not clearly err in making a factual finding, we "must also examine the IJ's factual finding on this issue." *Hernandez-Avalos*, 784 F.3d at 951. We review factual findings under the substantial evidence standard, accepting them as "conclusive 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* at 948 (quoting *Cordova v. Holder*, 759 F.3d 332, 337 (4th Cir. 2014)). And we review legal questions de novo. *Marynenka v. Holder*, 592 F.3d 594, 600 (4th Cir. 2010).

Ultimately, this Court must affirm a BIA decision unless it is "manifestly contrary to the law and an abuse of discretion." *Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011); *see also* 8 U.S.C. § 1252(b)(4)(D). The BIA abuses its discretion when it does not

---

[2] We note that single-member, non-precedential BIA decisions are entitled to the level of deference outlined in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *Martinez v. Holder*, 740 F.3d 902, 909–10 (4th Cir. 2014). This means that "we can rely on the agency's opinions as a 'body of experience and informed judgment' to which we may 'properly resort for guidance.'" *Id.* at 910 (quoting *A.T. Massey Coal Co. v. Holland*, 472 F.3d 148, 168 (4th Cir. 2006)). This "modest deference" hinges on "the thoroughness evident in [the BIA's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Id.* (alteration in original) (quoting *A.T. Massey Coal*, 472 F.3d at 168).

"offer a reasoned explanation for its decision, or if it distort[s] or disregard[s] important aspects of the applicant's claim." *Tassi*, 660 F.3d at 719.

III.

A.

Regarding the first element of an asylum claim, this Court has repeatedly and "expressly held that 'the threat of death qualifies as persecution.'" *Hernandez-Avalos*, 784 F.3d at 949 (quoting *Crespin-Valladares v. Holder*, 632 F.3d 117, 126). We have also held that "[e]xtortion itself can constitute persecution, even if the targeted individual will be physically harmed only upon failure to pay." *Oliva v. Lynch*, 807 F.3d 53, 59 (4th Cir. 2015). And "[a]pplicants who demonstrate past persecution are presumed to have a well-founded fear of future persecution." *Naizgi v. Gonzales*, 455 F.3d 484, 486 (4th Cir. 2006). Here, Zavaleta Policiano credibly testified by affidavit that MS-13 threatened and extorted her after her father left El Salvador; MS-13 threatened to kill her children if she did not meet the gang's demands; and she felt terrorized by the threats and fears for her safety and the safety of children. The Government has not challenged this evidence, and we thus conclude that Zavaleta Policiano has met the first requirement of eligibility for asylum.[3]

---

[3] The IJ and BIA both referenced the facts underlying Zavaleta Policiano's persecution and appear to have implicitly found that she suffered persecution before skipping ahead to consider whether that persecution occurred on account of a protected ground. *See, e.g.*, A.R. 4 (BIA discussing "the threats and harassment that [Zavaleta Policiano] and her family suffered from gang members"); A.R. 51 (IJ noting "that the (Continued)

B.

The IJ and BIA here based their respective rulings on the second prong of eligibility for asylum, which requires a petitioner to show the persecution occurred "on account of a protected ground." Both the IJ and the BIA properly recognized that family membership qualifies as a protected ground. *See Crespin-Valladares*, 632 F.3d at 125 (4th Cir. 2011). The IJ and BIA, however, went on to hold that Zavaleta Policiano had not established she was persecuted by MS-13 *on account of* her membership in the Policiano family.

As this Court has made clear, "[p]ersecution occurs 'on account of' a protected ground if that ground serves as 'at least one central reason for'" the persecution. *Id.* at 127 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). The applicant need not prove that the protected ground was "*the* central reason or even a dominant central reason for persecution"; she need only show that the protected ground was more than "an 'incidental, tangential, superficial, or subordinate' reason" underlying the persecution. *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009) (quoting *In re J-B-N-*, 24 I. & N. Dec. 208, 214 (B.I.A. 2007)).

---

lead respondent has submitted evidence which demonstrates that the Mara Salvatrucha gang coerced her and her father to pay periodic 'rent' in exchange for the safety of their children and family members"). Because "this Court is entitled to draw its own legal conclusions from the undisputed facts in the record that was created by the Board of Immigration Appeals," *Hernandez-Avalos*, 784 F.3d at 953 n.10, we make explicit the finding that Zavaleta Policiano has satisfied the first element of her asylum claim.

Zavaleta Policiano submits that the BIA erred in upholding the IJ's finding that she was not persecuted on account of her family membership. Zavaleta Policiano specifically contends that her relationship with her father was "at least one central reason" she was targeted and threatened by MS-13. Whether the gang's threats against Zavaleta Policiano were motivated by her family membership is a "classic factual question." *Crespin-Valladares*, 632 F.3d at 128. We thus start with the IJ's underlying factual finding before reviewing the BIA's rationale for accepting that finding.

The IJ acknowledged the record evidence that MS-13 coerced Zavaleta Policiano and her father to pay periodic "rent" in exchange for the safety of their children and family members. The IJ nevertheless concluded that Zavaleta Policiano "failed to produce evidence" that the gang threatened her *because of* her ties to her father. A.R. 51. In so doing, the IJ paid particular attention to the gang's notes in the record. The IJ stated, "[t]he notes [Zavaleta Policiano] received from the gang merely state that they seek her money in return for the safety of her family; they make no indication that she is being targeted for any reason other than garnering power and control over the community." A.R. 52. The IJ added that, generally speaking, "the gangs in El Salvador target various groups of individuals and seek to terrorize society in general as a means of obtaining greater influence and power in the region." A.R. 51. Thus, the IJ concluded that Zavaleta Policiano was not targeted by the gang on account of a protected ground.

The BIA held that the IJ's factual finding was not clearly erroneous. A.R. 4. It characterized the gang's "demands of money" as "acts of extortion" unrelated to Zavaleta Policiano's family ties. A.R. 4. The BIA also summarily stated that the instant case was

10

distinguishable from *Hernandez-Avalos*, where this Court found that a mother who received death threats after refusing to allow her son to join a local gang had established persecution on account of family membership. A.R. 4–5 (citing *Hernandez-Avalos*, 784 F.3d at 949–50).

We hold that the BIA abused its discretion in affirming the IJ's clearly erroneous factual finding. To start, the IJ unjustifiably relied on the fact that the threatening notes themselves did not explain why Zavaleta Policiano was targeted. As this Court recently explained, the single-minded focus on the "articulated purpose" for the threats while "failing to consider the intertwined reasons for those threats" represents "a misapplication of the statutory nexus standard." *Cruz v. Sessions*, 853 F.3d 122, 129 (4th Cir. 2017). It is unrealistic to expect that a gang would neatly explain in a note all the legally significant reasons it is targeting someone. The IJ's heavy reliance on the fact that El Salvadoran gangs target various groups of people in the country was similarly misguided. That "the criminal activities of MS-13 affect the population as a whole," we have explained, is simply "beside the point" in evaluating an individual's particular claim. *Crespin-Valladares*, 632 F.3d at 127.

More fundamentally, the IJ and BIA failed to appreciate, or even address, critical evidence in the record. It is this Court's responsibility to "ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the factfinder." *Baharon v. Holder*, 588 F.3d 228, 233 (4th Cir. 2009). The IJ did discuss the threatening notes (although while drawing unwarranted conclusions, as discussed above). But the IJ failed to address, or to assign any weight to, the significant body of unrebutted, indeed, undisputed, probative

11

evidence giving meaning and context to the threatening notes: (1) Zavaleta Policiano and her father's stores, as well as their familial relationship, were well-known in the community; (2) MS-13 threatened Zavaleta Policiano several times by phone; (3) Zavaleta Policiano's statement that MS-13 "threatened me because my father had left;" and (4) the threats against Zavaleta Policiano began *immediately* after her father fled to Mexico. These are inexcusable omissions in the agency's analysis.

The Government asks us to reject much of the overlooked evidence, characterizing it as Zavaleta Policiano's "subjective beliefs [] as to the gangs' motives." Appellees' Br. 22–23. This argument does not explain away the IJ's and BIA's wholesale failure to discuss the evidence, however. *See Ai Hua Chen v. Holder*, 742 F.3d 171, 179 (4th Cir. 2014) (explaining that the IJ and BIA must "offer a specific, cogent reason for rejecting evidence" (quoting *Tassi*, 660 F.3d at 720)). What is more, Zavaleta Policiano's affidavit includes much more than her "subjective beliefs"—it contains key evidence of the context, nature, frequency, and timing of the gang's threats against her and her family. By stipulating to the credibility and veracity of the affidavit, the Government forwent the opportunity to probe and weaken the evidentiary basis of Zavaleta Policiano's claims.

When considering the unchallenged record evidence, we are compelled to conclude that Zavaleta Policiano's familial relationship to her father was "at least one central reason" MS-13 targeted and threatened her. The evidence shows that MS-13 explicitly threatened to kill Zavaleta Policiano's father and his family if he did not pay the extortion demands, and that "[i]mmediately after" he fled El Salvador, the gang began threatening Zavaleta Policiano. A.R. 210. The timing of the threats against Zavaleta

12

Policiano is key, as it indicates that MS-13 was following up on its prior threat to target Barrientos's family if he did not accede to the gang's demands. This explanation appears especially probable given the absence of record evidence that Zavaleta Policiano was ever threatened before her father's departure. Beyond the timing, Zavaleta Policiano's affidavit outlines the well-known relationship between the two businesses and the Policiano family, and contextualizes her statement that she was threatened because her father left. And just as MS-13 threatened Zavaleta Barrientos and his children, the gang threatened Zavaleta Policiano and her children, suggesting a pattern of targeting nuclear family members. The totality of this undisputed evidence demonstrates that Zavaleta Policiano was persecuted on account of her family membership.

We add that the BIA's attempt to distinguish our precedent is unpersuasive. The BIA found, in a single sentence without any analysis, that Zavaleta Policiano's claim is distinct from the one at issue in *Hernandez-Avalos*. A.R. 4 (mentioning *Hernandez-Avalos*, 784 F.3d at 949–50). But that decision actually bolsters Zavaleta Policiano's position. There, the BIA denied asylum to a mother who was threatened by an El Salvadoran gang after she refused to allow her son to join the gang. The BIA held that the mother was not threatened on the basis of familial ties, but rather "because she would not consent to her son engaging in a criminal activity." *Hernandez-Avalos*, 784 F.3d at 949 (citation omitted). In other words, the BIA determined that the gang's threats against the mother were motivated by its desire to recruit the son. This Court rejected that "excessively narrow reading of the requirement that persecution be undertaken 'on account of membership in a nuclear family.'" *Id.* We instead found that the nexus

13

requirement was satisfied, explaining that the mother's relationship "to her son is why she, and not another person, was threatened with death if she did not allow him to join [the gang]." *Id.* at 950. The same logic applies here. MS-13 warned Zavaleta Barrientos that it would target his family if he did not pay the extortion demands, and the gang in fact threatened Zavaleta Policiano immediately after her father left. Zavaleta Policiano's relationship to her father is why she, rather than some other person, was targeted for extortion.

For all the reasons outlined above, we conclude that the BIA erred by affirming the IJ's clearly erroneous finding. Zavaleta Policiano was not required to prove that the gang's threats were "exclusively" motivated by her family ties—such "a requirement defies common sense." *See Cruz*, 853 F.3d at 130. She only needed to show that the relationship with her father was "at least one central reason" MS-13 threatened her. Because Zavaleta Policiano made this showing, we find the BIA decision to be manifestly contrary to law and an abuse of discretion. *See Hernandez-Avalos*, 784 F.3d at 953 n.10. By establishing that she was persecuted on account of her family membership, Zavaleta Policiano has satisfied the first two requirements of her asylum claim.

## C.

The final requirement for asylum eligibility is whether the Salvadoran government is either unwilling or unable to control the MS-13 gang members who threatened Zavaleta Policiano and her family. The BIA did not reach this question, and we thus remand to the BIA to consider this factual issue in the first instance. *See INS v. Ventura*,

14

537 U.S. 12, 16–17 (2002). Although "we are not empowered to consider" this factual issue without the BIA's input, *Hernandez-Avalos*, 784 F.3d at 953 n.10, we note that the undisputed evidence concerning the police officer's handling of Zavaleta Policiano's complaint is relevant to this determination, *see id.* at 953 (relying in part on "evidence of police ineffectiveness" in evaluating whether the Salvadoran government was unable or unwilling to control the Mara 18 gang).

## IV.

The BIA also denied withholding of removal relief to Zavaleta Policiano, reasoning that if she could not meet her burden for the asylum claim, she could not carry the heightened burden for the withholding claim. Because this determination rested on the BIA's erroneous asylum holding, we must vacate the BIA's order denying the withholding of removal claim and remand to the BIA for further consideration. *Cordova*, 759 F.3d at 340 n.7 (citing *Li Fang Lin v. Mukasey*, 517 F.3d 685, 649 (4th Cir. 2008)).

## V.

For the foregoing reasons, we grant Zavaleta Policiano's petition for review, reverse the BIA's determination that she failed to show persecution on account of her

family membership, vacate the BIA's decision with respect to her withholding of removal claim, and remand to the BIA for further proceedings consistent with this opinion.[4]

PETITION FOR REVIEW GRANTED,
REVERSED IN PART, VACATED IN PART, AND
REMANDED FOR FURTHER PROCEEDINGS

---

[4] Zavaleta Policiano also asks this Court to hold that she has established eligibility for relief under the CAT. In light of our resolution of Zavaleta Policiano's asylum claim, we do not address the CAT claim at this time. *See Cruz*, 853 F.3d at 130 n.6; *Illunga v. Holder*, 777 F.3d 199, 214 n.5 (4th Cir. 2015). If "the BIA declines to grant asylum or withholding of removal on remand, the BIA should reconsider her CAT claim in a manner consistent with the conclusions set forth in this opinion." *Cruz*, 853 F.3d at 130 n.6.

WILKINSON, Circuit Judge, concurring:

I am pleased to concur in the opinion of the court. I agree that, "by stipulating to the credibility and veracity of the affidavit, the Government forwent the opportunity to probe and weaken the evidentiary basis of Zavaleta Policiano's claims." Maj. Op. at 12.