**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1823

SANDRA MARLENY HERNANDEZ-CARTAGENA,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted: September 11, 2020                    Decided: October 14, 2020

Before THACKER, RICHARDSON, and QUATTLEBUAM, Circuit Judges.

Petition for review granted; reversed and remanded with instructions by published opinion. Judge Thacker wrote the opinion, in which Judge Richardson and Judge Quattlebaum joined.

Aaron R. Caruso, ABOD & CARUSO, LLC, Gaithersburg, Maryland, for Petitioner. Joseph H. Hunt, Assistant Attorney General, Bernard A. Joseph, Senior Litigation Counsel, Enitan O. Otunla, Trial Attorney, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

THACKER, Circuit Judge:

Sandra Marleny Hernandez-Cartagena ("Petitioner") petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the immigration judge ("IJ")'s denial of her application for asylum. Because the IJ and BIA abused their discretion by failing to consider important evidence and reaching conclusions that are inconsistent with the evidence in the record and contrary to law, we grant the petition for review, reverse the BIA's asylum decision, and remand to the BIA for proceedings consistent with this opinion.

## I.

## A.

Petitioner was born in El Salvador in 1996. She lived in El Salvador with her mother and father until her parents moved to the United States in 2013. At that point, Petitioner was living in El Salvador with her newborn daughter, her younger brother, and her younger sister. In early 2015, Petitioner was 19 years old and still living with her daughter and siblings in El Salvador when she received a threatening phone call from a man identifying himself as Petitioner's cousin. Petitioner testified that the caller stated, "we're calling you so that you will tell your father and your mother they have to send us $200." A.R. 95.[1] Petitioner further testified "after talking for a while the caller asked for the money and then he made some threats and he sent a number of texts saying that if [Petitioner's] father and

---

[1] Citations to the "A.R." refer to the Administrative Record filed by the parties in this appeal.

mother didn't send the money they would kill one of [Petitioner's] brothers or sisters." *Id.* at 97. The caller told Petitioner these threats came from an unidentified gang.

Petitioner informed her parents about the threats, and, in response, her parents sent her money to give to the gang. After the first call, the threats continued on a weekly and bi-weekly basis, and the amounts of money demanded increased. Petitioner's parents were unable to keep up with the increasing payments demanded. The first time there was a missed payment, gang members came to the family home. Petitioner was not home at the time, but her nine year old brother was. The gang members cut the boy with a knife and told him they had done so in order for "his parents . . . to see that the[] [gang members] weren't going to fool around." A.R. 125–26.

At the end of September 2015, gang members again came to Petitioner's house, where they beat Petitioner and her brother and raped Petitioner after threatening to kill her daughter. The assailants told the family they committed these acts "because [Petitioner's] parents hadn't paid them all the money they were asking for." A.R. 106.

As a result, Petitioner fled El Salvador with her daughter and siblings and entered the United States in November 2015. The day after her arrival, Petitioner was placed in removal proceedings and issued a Notice to Appear. Petitioner applied for asylum.

B.

Petitioner seeks asylum based on the persecution she suffered in El Salvador that occurred on account of her membership to the Hernandez-Cartagena family social group. In October 2017, Petitioner testified before the IJ, who found her credible. The IJ concluded that though Petitioner had put forth a cognizable particular social group and she

3

suffered past persecution, she had failed to demonstrate that this persecution occurred on account of her group membership. In the IJ's view, "the primary motivation for targeting [Petitioner's] family was monetary gain," and "[Petitioner's] familial relationship [was] in fact tangential, superficial and incidental" to the monetary objective. A.R. 58. Petitioner timely appealed to the BIA.

The BIA analyzed the extortionate threats Petitioner received and concluded, "[T]he conflict with the gangs was [Petitioner's] own conflict, rather than another family member's conflict," because she "herself was the target of the gangs' demands." A.R. 4. The BIA asserted, "To the extent [Petitioner's] entire household and each member of the household was the target of extortion demands, they were harmed by the gangs because of their failure to meet the extortion demands, rather than their family ties to themselves." *Id.* at 4–5. Thus, in the BIA's view, the persecution Petitioner suffered was not on account of her family membership. For that reason, the BIA affirmed the IJ.

Petitioner filed a petition for review with this court, claiming the IJ and BIA erred by improperly finding that her membership in a particular social group was not at least one central reason for her persecution.

## II.

A BIA decision to grant asylum "shall be conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). "The BIA abuses its discretion if it fails to offer a reasoned explanation for its decision, or if it distorts or disregards important aspects of the applicant's claim." *Cordova v. Holder*, 759 F.3d 332, 337 (4th Cir. 2014) (internal quotations omitted). We review the BIA's legal conclusions

4

de novo. *See id.* "We review factual findings for substantial evidence, treating them as conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted). Where the BIA has adopted and supplemented an IJ decision, we review both decisions. *See Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011).

III.

A.

"The [Immigration and Nationality Act ("INA")] permits the Secretary of Homeland Security or the Attorney General, in their discretion, to grant asylum to any alien who qualifies as a refugee." *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 948 (4th Cir. 2015) (citing 8 U.S.C. § 1158(b)(1)(A)). "To qualify [as a refugee eligible for asylum] . . . an applicant must establish that she has been subjected to past persecution or has a well-founded fear of future persecution on account of one of several grounds protected under the INA, including . . . membership in a particular social group." *Alvarez Lagos v. Barr*, 927 F.3d 236, 245 (4th Cir. 2019) (internal quotations marks omitted). We have repeatedly held "a nuclear family provides a prototypical example of a particular social group" cognizable in our asylum framework. *Cedillos-Cedillos v. Barr*, 962 F.3d 817, 824 (4th Cir. 2020) (internal quotation marks omitted).

An applicant who has established her membership in a cognizable particular social group must also demonstrate "a nexus exists between that protected status and her persecution." *Alvarez Lagos*, 927 F.3d at 248. In this regard, we have recognized, "Extortion itself can constitute persecution, even if the targeted individual will be

5

physically harmed only upon failure to pay." *Zavaleta-Policiano v. Sessions*, 873 F.3d 241, 247 (4th Cir. 2017) (quoting *Oliva v. Lynch*, 807 F.3d 53, 59 (4th Cir. 2015)). "[A]s we have repeatedly emphasized, it is enough that the protected ground be *at least one* central reason for the persecution -- that is, one central reason, perhaps intertwined with others, why the applicant, and not another person was threatened." *Alvarez Lagos*, 927 F.3d at 250 (emphasis in original) (internal quotation marks and citations omitted).

Here, the IJ and BIA determined that, although Petitioner was persecuted, and her family constituted a particular social group, her family membership was not a central reason for her persecution. But Petitioner is correct that the IJ and BIA failed to adequately address unrebutted evidence in the record -- evidence that compels the conclusion that Petitioner's family membership was at least one central reason for her persecution.

B.

1.

On numerous occasions we have found persecution exists where the applicant is being extorted at least in part because of his or her membership in a particular social group. *See, e.g.*, *Alvarez Lagos*, 927 F.3d at 250; *Zavaleta-Policiano*, 873 F.3d at 248. Of particular note, in *Alvarez Lagos*, we rejected a BIA determination that an extortionate gang had targeted the applicant "because of money," not a protected ground, where she could demonstrate that membership in her proposed social group -- unmarried mothers living under the control of gangs -- "was one reason why [she], and not another person was threatened." 927 F.3d at 247, 250. Further, in *Zavaleta-Policiano*, we rejected the BIA's characterization of a gang's "demands of money" as "acts of extortion" unrelated to the

6

applicant's particular social group as a "misapplication of the statutory nexus standard" because the BIA "fail[ed] to consider the intertwined reasons for those threats." 873 F.3d. at 248.

Similarly, in *Salgado-Sosa v. Sessions*, where an applicant "feared persecution [because of] his *stepfather's* refusal to pay the gang," we concluded "the IJ and BIA erred by focusing narrowly on the 'immediate trigger' for [the gang's] assaults -- greed or revenge -- at the expense of [the applicant's] relationship to his stepfather and family, which were the very relationships that prompted the asserted persecution." 882 F.3d 451, 458 (4th Cir. 2018) (emphasis in original) (citation omitted). We emphasized that the relevant analysis is not whether the applicant's *family* was persecuted because of a protected ground, but rather whether the *applicant himself* was persecuted because of a protected ground. *See Salgado-Sosa*, 882 F.3d at 458–59.

2.

"Ultimately, in reviewing agency decisions in immigration matters, it is our responsibility to ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the factfinder." *Hernandez-Avalos*, 784 F.3d at 951 (internal quotation marks omitted). The agency "is not entitled to base a decision on only isolated snippets of the record while disregarding the rest." *Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011) (internal quotation marks omitted).

Here, the IJ made no adverse credibility finding and concluded that Petitioner's immediate family constituted a cognizable social group and Petitioner suffered past persecution. Nonetheless, the IJ concluded, "There was simply nothing which [the IJ]

7

heard or read that suggested that [Petitioner's] membership in the family had anything to do with (1) why the family was targeted for extortion, or (2) why [Petitioner] was assaulted and her daughter threatened." A.R. 58. The BIA similarly concluded that Petitioner's situation was like the stepfather rather than the son in *Salgado-Sosa*, that is, Petitioner "herself was the target of the gangs' demands, or at least the point of contact for extortion, as she was the eldest of her siblings living together in her house in El Salvador." *Id.* at 4. Thus, the BIA concluded "the conflict with the gangs was her own conflict, rather than another family member's conflict." *Id.*

In reaching these conclusions, neither the IJ nor the BIA addressed Petitioner's *repeated* statements that the money being extorted was from her parents and that her persecutors contacted her in order to communicate their threats to her parents. She was the conduit. These statements are abundant in the record. *See, e.g.*, A.R. 106 (Petitioner testified that the gang members told her and her siblings the attack happened "because [Petitioner's] *parents* hadn't paid them all the money they were asking for.") (emphasis supplied); *id.* at 97 (Texts from Petitioner's cousin stated if "[Petitioner's] *father and mother* didn't send the money they would kill one of [Petitioner's] brothers or sisters.") (emphasis supplied); *id.* at 125–26 (When Petitioner's nine year old brother was attacked, he was told "this means *his parents* would be able to see that the[] [gang members] weren't going to fool around.") (emphasis supplied). We must "ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the factfinder." *Hernandez-Avalos*, 784 F.3d at 951 (internal quotation marks omitted). Failing to consider repeated evidence of

the connection of the threats and attacks to Petitioner's parents' ability or inability to pay the extorted demands was error.

## C.

Generally, "when the [BIA] errs, the proper course . . . is to remand to the agency for additional investigation or explanation." *Alvarez Lagos*, 927 F.3d at 249 (internal quotation marks omitted). But when "a [BIA] finding that an applicant failed to meet the statutory nexus requirement rests on a failure to consider all relevant record evidence, and that evidence, once considered, would compel any reasonable adjudicator to reach the opposite conclusion, then a remand is unnecessary, and we will reverse the [BIA]'s finding." *Id.* (internal quotation marks omitted). Here, the evidence compels reversing the BIA and granting the petition for asylum.

### 1.

The IJ's conclusion that there was nothing in the evidence presented which suggested that Petitioner's family membership had anything to do with why the family was targeted for extortion or why Petitioner was assaulted misapplies our precedent. The operative question is not whether Petitioner's membership in the group is why *the group* was targeted. The question is whether Petitioner's membership is "a central reason why *she, and not some other person*" was targeted. *Alvarez Lagos*, 927 F.3d at 249 (emphasis supplied).

Here, "once the right question is asked" -- that is, why was Petitioner being targeted -- the conclusion is quite clear: "whatever [the gang]'s motives for targeting [her] family, [Petitioner herself] was targeted because of [her] membership in that family." *Salgado-*

9

*Sosa*, 882 F.3d at 459. Petitioner clearly demonstrated that *her family* was being targeted for extortive threats and *she* was targeted because her parents were failing to comply with those threats. The undebatable intent of the gang members demanding that Petitioner tell her parents to pay up or their children and grandchild would be hurt was to pressure Petitioner's parents into paying the extortion money. Indeed, the gang made good on these threats by raping Petitioner and attacking her brother with a knife. Thus, we readily conclude the IJ "erred by focusing narrowly" on the reason for the threats against Petitioner's family. *Id.* at 458.

2.

The BIA likewise erred. The BIA affirmed the IJ's decision because Petitioner was unable to identify why her family was initially targeted for extortion and because Petitioner was the direct recipient of the extortionate threats. The BIA concluded Petitioner, her daughter, and her siblings "were harmed by the gangs because of their failure to meet the extortion demands, rather than their family ties to themselves." A.R. 4–5. As previously explained, identifying why Petitioner's family was targeted is not the relevant question. Nor can it be concluded that Petitioner is precluded from a claim of asylum simply because she directly received the extortionate threats. Such logic has repeatedly been rejected by this court.

For example, in *Hernandez-Avalos*, the BIA concluded that threats to kill the petitioner unless she permitted her son to join the gang were not based on her family membership. There, the BIA reasoned that "[the petitioner] was not threatened because of her relationship to her son (i.e. family), but rather because she would not consent to her

son engaging in criminal activity." 784 F.3d at 949 (internal quotation marks omitted). But, this illogical reasoning attempts to twist the petitioner (and victim) into someone with his or her own individual conflict with the gang, rather than recognize him or her as a conduit for pressure aimed at another family member. Therefore, in *Hernandez-Avalos*, we explained, "[the petitioner]'s relationship to her son is why she, and not another person, was threatened with death if she did not allow him to join [the gang], and the gang members' demands leveraged her maternal authority to control her son's activities." *Id.* at 950. We further deemed it "unreasonable to assert that the fact that [the petitioner] is her son's mother is not *at least one* central reason for her persecution." *Id.* (emphasis in original). Finally, the petitioner in *Hernandez-Avalos* was herself the direct recipient of threats, yet that did not preclude our holding that she was entitled to asylum. *See id.*

Contrary to the BIA's conclusion in this case, the record does not support the conclusion that Petitioner's *own* conflict with the gang precipitated any of the events in question. Indeed, substantial evidence in the record compels the conclusion that at least one central reason Petitioner was targeted was her membership in the Hernandez-Cartagena family. The unrebutted evidence in the record demonstrates that the threats and violence against Petitioner, her child, and her siblings were designed to get *her parents* to pay up. Pursuant to *Hernandez-Avalos,* it is therefore unreasonable to conclude that the fact that Petitioner is her parents' child -- a member of their family, concern for whom might motivate additional payments to the gang -- is not at least one central reason for her persecution.

11

IV.

For the reasons set forth herein, the petition for review is granted, the decision of

the BIA is reversed, and we remand to the BIA for proceedings consistent with this opinion.

*PETITION FOR REVIEW GRANTED;*
*REVERSED AND REMANDED WITH INSTRUCTIONS*