**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 20-1162**

───────────────

JOSE LUIS ORELLANA-TORRES,

            Petitioner,

    v.

MERRICK B. GARLAND, Attorney General,

            Respondent.

------------------------------

ERICA JOAN HASHIMOTO,

            Court-Appointed Amicus Counsel.

───────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────────

Argued:  March 10, 2022                          Decided:  May 4, 2022

───────────────

Before WYNN, HARRIS, and RICHARDSON, Circuit Judges.

───────────────

Petition for review denied by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Wynn and Judge Richardson joined.

───────────────

**ARGUED:**  Helen Mun, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Court-Appointed Amicus Counsel.  Robert Dale Tennyson, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**

Hilario Mercado, Jr., MERCADO LAW FIRM, P.L.C., Annandale, Virginia, for Petitioner. Erica Hashimoto, Director, Tiffany Seungin Yang, Supervising Attorney, Suzanne Dabage De La Espriella, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Court-Appointed Amicus Counsel. Ethan P. Davis, Acting Assistant Attorney General, Brian Boynton, Acting Assistant Attorney General, Justin Markel, Senior Litigation Counsel, Nancy E. Friedman, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Jose Luis Orellana-Torres, a native and citizen of El Salvador, seeks review of a final order of removal entered by the Board of Immigration Appeals ("BIA"). According to Orellana-Torres, he fled El Salvador after men affiliated with a leftist political party threatened him and then struck him in the face because he failed to vote in an election. Based on that account, he sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). An immigration judge rejected his application, and the BIA dismissed his appeal.

Before our court, Orellana-Torres argues primarily that the BIA erred in finding that he has not established past persecution based on political opinion for purposes of his asylum and withholding claims. He also contends that the BIA used an improper standard of review in reviewing his CAT claim. We cannot agree. Substantial evidence supports the BIA's determination that Orellana-Torres did not experience harm rising to the level of persecution. And given the absence of record evidence demonstrating a likelihood of torture, any procedural error with respect to Orellana-Torres's CAT claim is harmless. Accordingly, we deny the petition for review.

## I.

Orellana-Torres entered the United States without authorization in July 2014 and was detained by U.S. Immigration and Customs Enforcement. After passing an initial credible fear interview, he was served with a notice to appear for a removal hearing. At the removal hearing, represented by counsel, Orellana-Torres conceded removability, *see*

3

8 U.S.C. § 1182(a)(7)(A)(i)(I), and applied for asylum, withholding of removal, and protection under the CAT. We begin by summarizing Orellana-Torres's testimony before the Immigration Judge ("IJ") and then outline the legal proceedings that followed.

### A.

The following account is taken from Orellana-Torres's oral testimony at his removal hearing, which the IJ deemed credible. On January 15, 2014, Orellana-Torres was planting corn in a rural area in El Salvador when he was confronted by two men, whom he believed were affiliated with El Salvador's leftist political party, the Farabundo Martí National Liberation Front or "FMLN." The men told Orellana-Torres that he "needed to go vote for FMLN" in an upcoming election. A.R. 154. If he failed to do so, they said, they would "be coming back" and Orellana-Torres would "suffer the consequences." A.R. 155–56. Orellana-Torres was not a member of any political party and did not vote in the election.

On May 30, 2014, Orellana-Torres was leaving the same rural area when three men emerged from a truck with weapons. One of the men told Orellana-Torres that he was going to "suffer the consequences," and another struck him once in the face with a gun. A.R. 159, 161. Orellana-Torres suspected that these men were also affiliated with the FMLN and that they hit him because they found out that he did not vote. Orellana-Torres treated his injury at home and did not report it to the police. He left El Salvador in June 2014, leaving behind his partner and children. Finally, he testified that at some point after his departure, men "circled around" his former house. A.R. 166.

4

**B.**

In his oral decision, the IJ began by accepting as credible the "version of the story" recounted by Orellana-Torres at his hearing, because that oral testimony was "internally consistent" and "unwavering." A.R. 53. This credibility finding was significant: As the IJ explained, Orellana-Torres's account, though compelling, was "starkly inconsistent" with other record evidence. *Id.*

Most important, affidavits submitted by Orellana-Torres's sister and a former neighbor both attributed Orellana-Torres's flight from El Salvador to threats and violence by MS-13 gang members, not anyone affiliated with the FMLN. The sister's affidavit also differed from Orellana-Torres's testimony in the particulars, stating that Orellana-Torres had been threatened twice in January 2014, not once, and that he was beaten severely all over his body by six MS-13 gang members. Confronted with this discrepancy at his hearing, Orellana-Torres stood by his own story, repeatedly denying any involvement by MS-13 and maintaining that his only injury was one blow to the face during a confrontation with three FMLN-affiliated men. Though troubled by this inconsistency – for which Orellana-Torres had no "plausible explanation," A.R. 53 – the IJ decided to "give [Orellana-Torres] the benefit of the doubt in terms of what happened," A.R. 54, and accepted as credible his version of events.

Nevertheless, the IJ went on to deny Orellana-Torres's application in its entirety. With respect to asylum and withholding of removal, the IJ determined that Orellana-Torres had not shown that any persecution he suffered or feared was "on account of" his political views. *See* 8 U.S.C. § 1101(a)(42)(A) (identifying protected grounds – including "political

5

opinion" – supporting asylum); *id.* § 1231(b)(3)(A) (same for withholding of removal). Though the attack on Orellana-Torres was "regrettable," the IJ explained, it appeared to be an act of general criminality and not a "concerted effort by individuals to harm him on account of his political opinion and/or activities." A.R. 54. The IJ went on to proffer an alternative explanation for why Orellana-Torres might have wanted to leave El Salvador for the United States:  to reunite with his many family members already living in this country. Finally, the IJ denied Orellana-Torres's CAT claim, finding that he had "not produced one shred of evidence" that he had been or would be subjected to the requisite "severe pain or suffering" by or with the acquiescence of the Salvadoran government. A.R. 55; *see* 8 C.F.R. § 1208.18(a) (defining "torture").

The BIA affirmed, dismissing Orellana-Torres's appeal with a separate opinion. The BIA limited its review to the testimony credited by the IJ, recounting the same events: In January 2014, Orellana-Torres was threatened with "consequences" if he did not vote for the FMLN in an upcoming election, and in May 2014, he was hit in the face with a gun by men who also referenced "consequences." A.R. 3. Like the IJ, the BIA concluded that Orellana-Torres had not shown that his "attackers were motivated by his political opinion or any other basis for asylum." A.R. 4. Instead, the record established only that Orellana-Torres "suspected" he had been targeted based on his voting behavior. *Id.*

Unlike the IJ, the BIA went on to find that Orellana-Torres also had failed to meet two additional and independent requirements for asylum and withholding of removal. First, the BIA determined, Orellana-Torres had not shown that the "threats and one beating" he suffered in El Salvador "r[o]se to the level of persecution, which requires an

6

'extreme' level of conduct." A.R. 3 (quoting *Li v. Gonzales*, 405 F.3d 171, 177 (4th Cir. 2005)). And second, there was "no indication" that any harm suffered or feared by Orellana-Torres could be attributed to the Salvadoran government or an entity the government was "unwilling or unable" to control. A.R. 4; *see Crespin-Valladares v. Holder*, 632 F.3d 117, 128 (4th Cir. 2011) ("'[P]ersecution' under the INA encompasses harm inflicted by either a government or an entity that the government cannot or will not control.").

Finally, the BIA affirmed the denial of CAT relief. According to the BIA, there was "no clear error" in the IJ's determination that Orellana-Torres had failed to produce evidence that if removed to El Salvador, he would be subject to torture at the hands of the government or with governmental consent or acquiescence.

Orellana-Torres timely petitioned this court for review.

## II.

Orellana-Torres argues that the BIA improperly denied his claims for asylum, withholding of removal, and protection under the CAT.[1] To the extent the BIA issues its own opinion and does not adopt or incorporate the IJ's, we review only the decision of the

---

[1] During the pendency of his appeal, Orellana-Torres's counsel withdrew, and the court appointed Professor Erica Hashimoto of the Georgetown University Law Center Appellate Litigation Program as amicus to brief and argue this case in support of Orellana-Torres. For ease of reference, this opinion attributes to Orellana-Torres both the arguments presented by his former counsel and those presented by amicus counsel. We appreciate the able assistance of amicus counsel in this matter.

7

BIA, as the agency's final order. *Zavaleta-Policiano v. Sessions*, 873 F.3d 241, 246 (4th Cir. 2017); *see Martinez v. Holder*, 740 F.3d 902, 908 & n.1 (4th Cir. 2014). The BIA's legal determinations are reviewed de novo and its factual findings for substantial evidence. *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 948 (4th Cir. 2015). "Substantial evidence is a 'highly deferential' standard of review," *Toledo-Vasquez v. Garland*, 27 F.4th 281, 286 (4th Cir. 2022) (quoting *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020)), and we may disturb the BIA's factual findings only if "any reasonable adjudicator would be compelled to conclude to the contrary," *Perez Vasquez v. Garland*, 4 F.4th 213, 220 (4th Cir. 2021) (internal quotation marks omitted).

## A.

We begin with Orellana-Torres's asylum and withholding of removal claims. To qualify for relief, Orellana-Torres must make each of three showings: that he "(1) has a well-founded fear of persecution; (2) on account of a protected ground; (3) by an organization that the Salvadoran government is unable or unwilling to control." *Hernandez-Avalos*, 784 F.3d at 949 (outlining asylum criteria); *see Marynenka v. Holder*, 592 F.3d 594, 600 (4th Cir. 2010) (outlining same criteria for withholding of removal, but subject to a higher "clear probability" standard). If Orellana-Torres can show past persecution, then he is "presumed to have a well-founded fear of future persecution." *Zavaleta-Policiano*, 873 F.3d at 247 (internal quotation marks omitted); *see* 8 C.F.R. § 1208.13(b)(1) (setting out presumption and standard for rebuttal).

On appeal, Orellana-Torres argues primarily that what happened to him in El Salvador, as recounted during his credited testimony before the IJ, constitutes past

8

persecution. The BIA disagreed, finding that Orellana-Torres had made none of the necessary three showings: that the harm he suffered rose to the level of "persecution," that it was "on account of" his political opinion or another protected ground, or that it was perpetrated by the Salvadoran government or an entity the government could not or would not control. We may begin and end with the first of these findings. The BIA's determination that the conduct recounted by Orellana-Torres is not so "extreme" as to constitute "persecution," A.R. 3, is consistent with law and supported by substantial evidence. Accordingly, and on that ground alone, we deny Orellana-Torres's petition as to his asylum and withholding of removal claims.

First, on this record, the BIA was not compelled to conclude that the single injury identified by Orellana-Torres – the blow to his face with a gun – constituted "persecution." Any such use of force is deeply regrettable, and we agree with the IJ that the attack described by Orellana-Torres was "despicable." A.R. 53. But as the BIA noted, we have made clear that "persecution" is a concept reserved for "extreme" cases. *Li*, 405 F.3d at 177 (internal quotation marks omitted). Not all physical mistreatment rises – or "sinks," *see Baharon v. Holder*, 588 F.3d 228, 232 (4th Cir. 2009) – to that level, and we generally have treated as persecution only "severe physical abuse or torture," *Li*, 405 F.3d at 177.

Here, the record reveals no specifics about the severity or extent of the damage inflicted on Orellana-Torres; although Orellana-Torres was asked at his hearing to detail his injuries, he indicated only that he was hit near his nose and treated his injury at home. Moreover, "isolated incidents" of violence, as opposed to "systematic" abuse, are less likely to qualify as persecution. *Baharon*, 588 F.3d at 232. Given both the absence of

9

evidence as to severity and the isolated nature of the injury, it is not apparent from the record that Orellana-Torres suffered the kind of severe mistreatment that would justify, let alone compel, a finding of persecution. *See Li*, 405 F.3d at 177 (explaining that "even minor beatings" may not amount to persecution (cleaned up)); *Qitian Ni v. Holder*, 603 F. App'x 181, 187 (4th Cir. 2015) (per curiam) (unpublished) (concluding, where petitioner was detained and beaten with a baton, that "[t]his isolated incident, although cruel, fails to rise to the level of persecution required for relief").

Orellana-Torres does not meaningfully dispute that the single blow to his face is insufficient to show persecution. Instead, he argues that he has established persecution on a different ground: because he was subjected to death threats. As Orellana-Torres argues – and as the government agrees – threats of death qualify as persecution. *See Portillo Flores v. Garland*, 3 F.4th 615, 627–28 (4th Cir. 2021) (en banc); *Bedoya v. Barr*, 981 F.3d 240, 246 (4th Cir. 2020). But Orellana-Torres has not presented evidence that his life in fact was threatened – or, more precisely, evidence that would compel that conclusion. First and most important, Orellana-Torres never "credibly testified that [he] received death threats." *Hernandez-Avalos*, 784 F.3d at 949. In the hearing testimony credited by the IJ, Orellana-Torres said only that the men who approached him threatened him with undefined "consequences." A.R. 156. More than once, the IJ pressed Orellana-Torres to explain exactly what was said and how he understood the threat. *See* A.R. 156, 158–59. But

10

Orellana-Torres declined to provide additional detail and so we are left with no credible evidence of any express death threat.[2]

Instead, Orellana-Torres contends that he was the victim of an implicit death threat, conveyed through threats of "consequences" taken together with the attack he experienced, in which he was struck with a gun. It is true that a cognizable death threat may be implicit, in that it need not "explicitly say" that the perpetrator will "kill" the victim. *Bedoya*, 981 F.3d at 246. But the threat still must be "plain and unambiguous," as it was in *Bedoya*, where it referenced nearby "BOMBS" and a plan to "hunt" the petitioner during a specific time period. *Id.* There is no such clarity around the vague and non-specific threat of "consequences" made to Orellana-Torres. Even Orellana-Torres, asked expressly by the IJ what he took "suffer the consequences" to mean, did not read into that phrase a threat of death and repeated only that "people were being threatened." A.R. 156. On this record, as the government argues, a reasonable factfinder would be free to conclude that the "consequences" threatened in the first encounter are most naturally understood as the same "consequences" that materialized in the second: physical harm, in the form of a blow to the head, and not death.

---

[2] Though he does not rely substantially on it for his argument, Orellana-Torres does refer to the written declaration attached to his asylum application, in which he stated that the men who attacked him in May 2014 threatened to kill him if he went to the police. But the IJ, as discussed above, credited only Orellana-Torres's oral testimony at his hearing and the BIA followed suit, considering only those factual representations deemed credible by the IJ. Orellana-Torres has not challenged that credibility judgment – which, after all, gave him the "benefit of the doubt," A.R. 54, in the face of significant discrepancies between his testimony and other record evidence – and we have no grounds for questioning it here.

11

Finally, Orellana-Torres faults the BIA for failing to consider the evidence of persecution "cumulatively," including what he now describes as an "armed search for him at his home" by the FMLN in the days after he left El Salvador. Amicus Br. at 19–21. According to Orellana-Torres, that event both contextualizes the severity of the harm he suffered while in El Salvador and establishes a well-founded fear of future persecution should he return. But there is no record support for this argument. In his credited hearing testimony, Orellana-Torres did refer once to unspecified men who "circled around [his] house" after he left the country, A.R. 166, but provided no context or detail and never described the men as armed. Nor did Orellana-Torres say more about the event outside his credited testimony; his asylum application notes only that after he left El Salvador, "a truck was seen parked at [his] home." A.R. 204.

Instead, the basis for the "armed search" described on appeal appears to be the affidavits of Orellana-Torres's sister and former neighbor, which do report such an episode – but also identify Orellana-Torres's attackers as MS-13 gang members and have him fleeing El Salvador to avoid gang violence, contrary to Orellana-Torres's testimony. Orellana-Torres disavowed these accounts at his hearing, and the IJ credited his version of events over theirs. We can think of no reason why the BIA would be compelled to rely on this discredited testimony, and Orellana-Torres has provided none. Accordingly, we are left with Orellana-Torres's single reference at his hearing to some number of men who at some point after June 2014 "circled" his former home, A.R. 166, which neither meaningfully elevates the severity of the conduct at issue nor independently establishes a well-founded fear of future conduct rising to the level of persecution.

12

In sum, the record in this case does not compel a conclusion that Orellana-Torres experienced or will experience harm that rises to the level of persecution. We therefore uphold the BIA's determination that he is ineligible for asylum and withholding of removal on that basis alone.[3]

**B.**

Orellana-Torres also argues that the BIA erred in denying his application for relief under the CAT. An applicant for CAT relief must show that it is more likely than not that he would be tortured if removed to the country in question. *See* 8 C.F.R. § 1208.16(c)(2). Torture is an act that inflicts "severe pain or suffering . . . at the instigation of, or with the consent or acquiescence of, a public official." *Id.* § 1208.18(a)(1); *see Cabrera Vasquez v. Barr*, 919 F.3d 218, 222 (4th Cir. 2019) (outlining standard). The IJ concluded that Orellana-Torres failed completely to establish a likelihood of torture meeting that standard, and the BIA affirmed, finding "no clear error" in the IJ's determination.[4] A.R. 4.

---

[3] As a result, we need not address Orellana-Torres's arguments regarding the other elements of an asylum claim. That includes Orellana-Torres's contention that the IJ's fact-finding was tainted by groundless speculation about his desire to reunite with his family. The IJ focused exclusively on the "nexus" requirement for asylum, resting his decision on Orellana-Torres's failure to show that any persecution he suffered was "on account of" his political beliefs. Even assuming, for the sake of argument, that the IJ's nexus finding was affected in some way by impermissible speculation, the BIA's separate determination under the "persecution" prong would remain grounds for denial of Orellana-Torres's petition.

[4] Because this portion of the BIA's opinion rests on an examination of the IJ's factual finding, our review extends to that finding, as well. *See Zavaleta-Policiano*, 873 F.3d at 246.

13

On appeal, Orellana-Torres argues primarily that the BIA erred in applying the "clear error" standard of review. And indeed, we have held that an IJ's torture determination is a mixed question of law and fact, with the ultimate conclusion subject to de novo review by the BIA. *See Cruz-Quintanilla v. Whitaker*, 914 F.3d 884, 889–92 (4th Cir. 2019); *Turkson v. Holder*, 667 F.3d 523, 529–30 (4th Cir. 2012). But given the record evidence, we are confident that any error by the BIA in this regard "clearly had no bearing" on the substance of its decision, and thus allow the BIA's decision to stand. *See Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (internal quotation marks omitted) (applying harmless error analysis to BIA decision); *Tassi v. Holder*, 660 F.3d 710, 725 (4th Cir. 2011) (discussing and applying harmless error standard).

In support of his CAT claim, Orellana-Torres relies on the same evidence he offers to show persecution: Men threatened him with "consequences" if he did not vote for the FMLN, struck him in the face with a gun for failing to vote, and later "circled" his house. That is enough to show, he argues, that he suffered past torture and would be unable to safely relocate were he removed to El Salvador now, which together add up to a likelihood of future torture. *See Cabrera Vasquez*, 919 F.3d at 222 (listing factors relevant to likelihood of future torture, including evidence of past torture and ability to safely relocate within country). But as discussed above, the BIA found – and permissibly so, on this record – that the harm experienced by Orellana-Torres was not the kind of "severe physical abuse," *see Li*, 405 F.3d at 177, required to show past "persecution" for asylum and withholding of removal purposes. We think it clear that whatever standard of review it employed, the BIA would not change course when it comes to "torture" under the CAT,

14

which likewise must involve "severe pain or suffering," 8 C.F.R. § 1208.18(a)(1), and is further limited to "extreme form[s] of cruel and inhuman treatment" rather than "lesser forms of cruel, inhuman or degrading treatment or punishment," *id.* at § 1208.18(a)(2). *See Scarlett v. Barr*, 957 F.3d 316, 334 (2d Cir. 2020) (explaining that CAT claim fails for same reason as "parallel" withholding claim where both "rest on the same factual predicate").

We recognize, as Orellana-Torres argues, that the BIA disposed of his CAT claim without much reasoning. But in the context of its full opinion, including its finding regarding "persecution," we can discern that it rested on grounds supported by the record. *See Cordova v. Holder*, 759 F.3d 332, 340 (4th Cir. 2014) (requiring "rational bridge" between record and agency conclusions (internal quotation marks omitted)); *cf. Scarlett*, 957 F.3d at 334 (noting that CAT claim relying on same factual premise as rejected withholding claim "merits little discussion"). Accordingly, we deny the petition for review as to Orellana-Torres's claim for CAT relief.

## III.

For the foregoing reasons, the petition for review is denied.

*DENIED*

15