**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 24-1936**

───────────────

KARLA RUBENIA CRUZ DE SAENZ

       Petitioner,

v.

PAMELA JO BONDI, Attorney General

       Respondent.

------------------------------

AMERICAN IMMIGRATION LAWYERS ASSOCIATION; AMICA CENTER FOR IMMIGRANT RIGHTS; CENTER FOR GENDER & REFUGEE STUDIES; IMMIGRATION LAW CLINICS; JUST NEIGHBORS; PISGAH LEGAL SERVICES; TAHIRIH JUSTICE CENTER

       Amici Supporting Petitioner.

───────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────────

Argued: September 9, 2025           Decided: January 16, 2026

───────────────

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

───────────────

Petition for review denied by unpublished opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge King joined.

───────────────

**ARGUED:** Liana Elizabeth Montecinos, MONTECINOS IMMIGRATION LAW LLC, Silver Spring, Maryland, for Petitioner. Aric Allan Anderson, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Brett A. Shumate, Acting Assistant Attorney General, Holly M. Smith, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Katherine L. Evans, Charles Shane Ellison, Immigrant Rights Clinic, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina; Sabrineh Ardalan, Deborah Anker, Nancy Kelly, John Willshire Carrera, Meredith Gudesblatt, Daisy Hunter-Haydon, HARVARD IMMIGRATION & REFUGEE CLINICAL PROGRAM, Cambridge, Massachusetts, for Amici Curiae.

———————

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

Petitioner Karla Rubenia Cruz de Saenz ("Cruz"), a native and citizen of El Salvador, challenges the denial of her applications for asylum and withholding of removal by the Board of Immigration Appeals ("BIA"). She claims that the BIA's determinations lacked a sound basis in the record and that the BIA arbitrarily ignored unrebutted, legally significant facts. We find that the Immigration Judge ("IJ") and BIA properly engaged with the available record evidence. We further hold that substantial evidence supports the agency's conclusion that Cruz failed to establish that the Salvadoran government was unable or unwilling to protect her. We therefore deny the petition for review.

I.

A.

On or about May 27, 2014, Cruz entered the United States without proper documentation and inspection, having fled El Salvador as a result of threats made by an MS-13 gang member named "Alexander." J.A. 89, 92–93.

Cruz testified that, beginning in early 2014, Alexander began calling her from his prison cell in Cojutepeque. Cruz had no known prior contact with Alexander before these phone calls were initiated. Alexander continued contacting Cruz on an almost daily basis for approximately three months. During these communications, he demanded that Cruz visit him for conjugal visits and smuggle contraband into the prison facility. If she refused to comply, Alexander promised to hurt Cruz's husband and son, expressing accurate knowledge of their typical daytime whereabouts. J.A. 177–86, 205.

3

On one occasion, Cruz attempted to cease communication with Alexander by claiming that her phone was broken. Alexander told her that he would send her a new device and, subsequently, an unknown individual did indeed attempt to deliver a new phone to Cruz. At no point did Cruz comply with Alexander's requests. At no point did she report these communications to her husband or the police. And at no time did MS-13 harm Cruz, her husband, or her son. J.A. 185–88, 194, 202.

In March 2014, Cruz finally changed her phone number and all contact with Alexander ceased. Believing that her defensive action would trigger retribution by Alexander and MS-13, Cruz fled with her children to the United States. J.A. 188–89, 205, 211.

B.

On May 29, 2014, two days after Cruz entered the United States, the Department of Homeland Security ("DHS") charged her as removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). J.A. 419–20. Cruz later conceded removability and filed an application for asylum and withholding of removal. J.A. 113–114, 119.

The Immigration and Nationality Act ("INA") affords the Attorney General the discretion to grant asylum to aliens who qualify as "refugees." 8 U.S.C. § 1158(b)(1)(A). The term "refugee" is not a loose one. Rather, it has a precise statutory definition: a person who "is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [their home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular

4

social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). This statutory framework boils down to three discrete prongs: (1) whether the applicant has "suffered past persecution or has a well-founded fear of future persecution"; (2) whether the persecution is "on account of" a statutorily protected ground; and (3) whether the perpetrator of said persecution is either the home government itself or a "non-state actor whom the government is 'unable or unwilling to control.'" *Molina-Diaz v. Bondi*, 128 F.4th 568, 571 (4th Cir. 2025) (quoting *Portillo Flores v. Garland*, 3 F.4th 615, 626 (4th Cir. 2021) (en banc)). If asylum applicants fail to establish any one of these elements, their applications cannot succeed, and a court need not examine the remaining elements.

Our review of applications for withholding of removal follows nearly identical criteria as that for asylum applications. However, while asylum is discretionary, withholding of removal is mandatory when an applicant makes satisfactory showings. *Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018). Thus, we hold withholding of removal to a higher evidentiary standard, requiring a "clear probability of persecution," rather than a mere "well-founded fear." *Id.* (internal quotation marks omitted). By necessity, therefore, an application for withholding of removal will fail if an applicant cannot meet the lower threshold for asylum. *Mulyani v. Holder*, 771 F.3d 190, 198 (4th Cir. 2014).

C.

On November 25, 2019, an IJ heard testimony from Cruz. J.A. 171. Afterwards, he issued an oral decision denying her applications and ordering her removed to El Salvador.

5

J.A. 97–98. Relevant to the present petition, the IJ reasoned that the proffered particular social group, "Salvadoran women," was not cognizable because it was "overbroad," and that she did not establish a sufficient connection between that social group and any past or expected future harm. J.A. 95. Further, the IJ concluded that Cruz presented no "conclusive evidence of the government's unwillingness or inability to assist individuals situated as the respondent." J.A. 96. In reaching this determination, the IJ relied in part upon *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) [hereinafter *A-B- I*], which required applicants to establish that the foreign government "condoned" the private violent conduct or "or at least demonstrated a complete helplessness to protect the victims." *Id.* at 337 (quoting *Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000)).

Cruz subsequently appealed the IJ's decision to the BIA. Before the BIA rendered its decision, the Attorney General vacated *A-B- I*, eliminating the additional "condonement" and "complete helplessness" requirements. *Matter of A-B-*, 28 I. & N. Dec. 307 (A.G. 2021); *see also Grace v. Barr*, 965 F.3d 883, 897–900 (D.C. Cir. 2020) (describing how *A-B- I* made the government control requirement more demanding).

The BIA affirmed the IJ's decision. It concluded that "Salvadoran women" was not a sufficiently particularized social group because that group "could include women in El Salvador of a wide range of ages, lifestyles, backgrounds, and other identifying factors." J.A. 4. With regard to the government-control element, the BIA found that the intervening vacatur of *A-B- I* held no relevance to the case because the IJ's "findings and

6

determinations are supported by other Board precedent." J.A. 5 n.6.[1] The BIA upheld the

IJ's determination that petitioner did not establish that the El Salvadoran government was

not unwilling or unable to protect her against Alexander or MS-13. The BIA supported this

determination on the basis of record evidence that the government did police criminal

gangs and that Cruz had not provided any support for her fear that police and MS-13 were

"in cahoots." J.A. 5, 208.

Cruz filed a petition for review with this court.

## II.

## A.

Congress has provided for only narrow review of BIA decisions denying

applications for asylum and withholding of removal. *See Mulyani*, 771 F.3d at 197. We

cannot upset the agency's findings of fact so long as "they are supported by reasonable,

substantial, and probative evidence on the record considered as a whole." *Tassi v. Holder*,

---

[1] Petitioner makes much of the BIA's comment that the IJ had cited *A-B- I* with respect to the cognizability of the purported social group, not the government-control element. Opening Br. at 39–40; Reply Br. 2–8. However, the BIA's discussion was confined to a single footnote corresponding to the government-control section of its opinion and the BIA properly cited to the section of the IJ's opinion discussing *A-B- I* and government control. J.A. 5 n.6; *see also* J.A. 96. At best, the BIA's opinion contained a mere scrivener's error; at worst, it evinces a moment of inconsequential confusion. Regardless, the error here is a harmless one and does not affect our analysis. *See Tassi v. Holder*, 660 F.3d 710, 725 (4th Cir. 2011) ("Notwithstanding the presence of error, we are entitled to permit a BIA decision to stand if the legal and factual infirmities 'clearly had no bearing on the . . . substance of the decision reached.'" (quoting *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004))). And we agree with the BIA that the IJ in fact applied the appropriate "unable or unwilling" standard rather than the heightened bars of *A-B- I* despite the lone citation. *See* J.A. 94–96; *see also Molina-Diaz*, 128 F.4th at 577 n.12.

660 F.3d 710, 719 (4th Cir. 2011). And, here, the question of whether the El Salvadoran government is "unable or unwilling to control a private actor is a factual question that must be resolved based on the record in [this] case." *Orellana v. Barr*, 925 F.3d 145, 151 (4th Cir. 2019) (internal quotation marks omitted) (quoting *Crespin-Valladares v. Holder*, 632 F.3d 117, 128 (4th Cir. 2011)).

The substantial evidence standard is amongst the higher degrees of deference we afford fact finders. It is not enough that reasonable minds could plausibly differ as to the appropriate conclusion. *See Niang v. Gonzales*, 492 F.3d 505, 510–11 (4th Cir. 2007). Rather, to disturb the agency's findings, we must determine that "any reasonable adjudicator would be *compelled* to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphasis added); *see also Orellana*, 925 F.3d at 151. In the present case, ample evidence supports the BIA's determination that the El Salvadoran government was not unwilling or unable to control MS-13.

B.

It is undisputed that Cruz never filed any reports with law enforcement. To be sure, Cruz need not make an endless parade of attempts met with naught but the government's silence or token efforts at placation. But Cruz must still show "good reason" for failing to seek government intervention. *Orellana*, 925 F.3d at 153. In other words, Cruz must prove that any efforts to gain government protection "(1) would have been futile or (2) [would] have subjected [her] to further abuse." *Portillo Flores*, 3 F.4th at 635 (first alteration in

8

original) (quoting *Orellana*, 925 F.3d at 153). The record contains sufficient evidence to support a determination that Cruz failed to meet this standard.

In an attempt to establish both the futility and danger of filing a police report, Cruz relies primarily on conclusory allegations of collusion between the police and MS-13—with only a passing reference to an outdated country conditions report. *See* Opening Br. at 51–52. And while the IJ did deem Cruz's testimony credible, J.A. 94, the earnestness of her fear of retaliation by Alexander and MS-13 does not prove a lack of government control. Based on the record before us, Cruz's allegations of widespread police collusion with gangs are little more than subjective beliefs or assumptions. In short, Cruz provides little to no concrete evidence of such illicit relationships.

What the record does contain is evidence that Cruz's family filed a police report regarding MS-13's murder of Cruz's brother without any known repercussions. J.A. 196–97. And Cruz does not cite any other personal or particularized evidence of retribution from filing police reports. She even acknowledges that she does not believe all Salvadoran police are corrupt—"some" are actually "faithful" in Cruz's eyes. J.A. 191. Furthermore, Cruz concedes that Alexander did not once follow through on any of his threats after months of her noncompliance and after cessation of all communications. J.A. 194, 202; *see also* Oral Arg. at 05:42–06:18. This past inactivity could reasonably erode one's belief that Alexander and MS-13 would retaliate if they learned about a police report.

Meanwhile, the very fact that Alexander was incarcerated demonstrates that Salvadoran law enforcement has made efforts to combat criminal gangs. So too does the decision to shut down the Cojutepeque prison in a purported effort to combat corruption.

9

J.A. 207, 227. Indeed, the BIA and IJ cited State Department reports indicating that the "Salvadoran government authorities continue to take action against criminal gangs," J.A. 5 n.5, including by "combin[ing] forces of the police with the military," J.A. 96.

C.

Petitioner contends that the BIA's decision is doomed by its failure to take into account various pieces of evidence Cruz raised. *See* Reply Br. at 10–11. It is true that the substantial evidence standard does not absolve us from "ensur[ing] that unrebutted, legally significant evidence is not arbitrarily ignored by the factfinder." *Hernandez-Cartagena v. Barr*, 977 F.3d 316, 320–21 (4th Cir. 2020) (quoting *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 951 (4th Cir. 2015)). But it is equally true that the IJ and BIA need not "discuss every piece of evidence in the record." *Molina-Diaz*, 128 F.4th at 577 (quoting *Nolasco v. Garland*, 7 F.4th 180, 190 (4th Cir. 2021)). Indeed, we operate under the baseline presumption that the IJ and BIA have "reviewed the evidence presented to them and made their decisions based on the relevant evidence." *Nolasco*, 7 F.4th at 190 (quoting *Martinez v. Holder*, 740 F.3d 902, 914 (4th Cir. 2014)).

Here, all the evidence Cruz claims that the BIA ignored was rebutted by other record evidence, was legally insignificant, or was actually addressed by the agency. Most of her allegations are conclusory and thus have inherently little weight in the agency's decision-making. And to the extent that she does cite various reports, these are outdated and/or contradicted by the government's evidence, particularly a 2022 State Department report. Furthermore, at least some of Cruz's evidence cuts against her own arguments. One report

she cites, for example, recounts how "[i]n 2018 El Salvador's attorney general announced the creation of a new unit to oversee crimes related to violence against women, girls, LGBTQI people and other groups vulnerable to violence," concluding that "[a]uthorities do seem to be slowly managing to turn the tide." J.A. 244. It is thus unsurprising that the IJ and BIA chose to reach a different inference regarding police efficacy than Cruz based on the entirety of the record. Such a difference does not render "arbitrary" the agency's decision.

### III.

Cruz does not dispute the veracity of the factual support for the BIA's decision. She does not claim that the agency "misstated" her testimony, falsely characterized her circumstances, or relied upon "unsupported personal knowledge of conditions in El Salvador." *Hernandez-Avalos*, 784 F.3d at 951. The record is clear that she did not give the government a fair chance to show that they were "unable or unwilling" to offer her protection. And she did not prove that providing law enforcement that chance would be futile or dangerous. If she had done these things, this would be a different case. Instead, petitioner's claims boil down to differences in how she and the agency drew inferences from the record before them. Under our deferential substantial evidence standard, however, such a dispute presents no reversible error. We must therefore deny the petition for review.

*DENIED.*